The next case is number 25-1424, Fernal Antonio Guevara-Castellanos v. Pamela J. Bondi. At this time, would counsel for the petitioner please introduce himself on the record to begin. Good afternoon, Your Honor. May it please the Court, St. Joachim for Petitioner. Chief Judge Barron, may I reserve one minute for rebuttal? Thank you. I will start with the gatekeeping issue or the timeliness of the petition. So the government is asking this Court to dismiss the petition because petitioner should have filed his petition by November of 2023. And by that time, no such petition was even filed with the Supreme Court in Riley v. Bondi. But that's what the government is relying on. And at that time, this Court's practice based on precedent was to allow litigants who are subject to reinstatement orders to file their petitions for review within 30 days of all conclusion of including the IJNBI proceedings. And in fact, as we cited, there was an example in 2018 that this Court dismissed the petition for review because this Court construed that as the reinstatement order, which was the renewal order did not become final. Once a person, it has ongoing fair proceedings. So now, we acknowledge that this Court cannot ignore the holding and reasoning of Riley. And this Court has to apply the holding and reasoning of Riley to this new context. Now, there are different options for this Court to resolve that issue in a way that the Court's renewal of law does not penalize petitioner in this case as well as other litigants who have pending cases before this Court, but at the same time provide a narrow and reasonable ruling that will be applying this new rule of requiring litigants to file their petitions within 30 days of the reinstatement orders prospectively. Do you have any idea what the universe of potential filings that we might get if we were not to apply it retroactively would be in this circuit? With a caveat, we do not know everything. But as far as we know, the litigants who do have counsel have been advised of filing protective petitions for review. So with one caveat, obviously, I do not know everything, but I do not think that if the Court applies this new rule prospectively, the Court will not receive significantly more petitions reviewed. Because those who do have counsel all have rushed to file their petitions review, and there are nine cases pending, at least nine or ten cases pending before this Court. So I don't think that this Court would have, even assuming there is a few more, not significantly more. But by applying this new rule prospectively, this Court does not need to address equitable determination. But can I ask you about how to think about the new rule exception? Is that circuit by circuit? It seems awfully strange that it would be a new rule in the First Circuit, but not a new rule in the Third Circuit, depending on what court they had, and it could be a different one in the Fourth Circuit. It seems like that is contemplating more of a new rule from the perspective of the ultimate decision maker. I don't know if that is right, but is there a case law that suggests that it can have that variation? And equitable tolling does not have that problem. Yes, Your Honor. I think it has to be, not that it has to be, but it can be circuit by circuit, because the idea of this prospective application of new rule of law has to be based on this Court's rule of law. I know that we, if we were the only judge, the only court, I get it. But it's just that the new rule has been articulated by a national court above us. So when it thinks about the new rule question, when it reviews us, is it going to be thinking about the new rule question circuit by circuit, and the relevant question will be what was each circuit's law pre-Riley, vis-a-vis Riley, and Riley will only apply prospectively in the circuits in which the circuits already had done something? That just seems not likely to be what was being contemplated when they identified that new law exception, but I could be wrong. So I think that presumes, please correct me, Your Honor, if I'm wrong, but I think that presumes that Riley is a new rule-creating case, and our position is that it's not. The reasoning in holding a Riley do apply, but the Supreme Court did not address the question, this positive question of when the Wien Statement order becomes final. So that different context is significant because our position is that this case, applying the reasoning in law. So you would say in a case on all fours with Riley, there would be no, notwithstanding what we had said about withholding in finality pre-Riley, then litigants would be bound by Riley, couldn't assert equitable tolling, or couldn't assert, are you sure you want to say that? So the court does not need to decide that question in this case. However, our view is that if, let's say there's a case involving Farrell, we call it Farrell's final administrative order, I'm sorry, final administrative removal order, which was the removal order issued before Riley, then the court would have to decide whether the Supreme Court apply the new rule to Mr. Riley and Riley to the parties in that case. So that's the second question. And then if the court rules that the Supreme Court did, so it does then apply retroactively, not just to Mr. Riley or all others who are similarly situated, then the court can go into the equitable tolling issue of whether the 30-day deadline is subject to equitable tolling and whether that should apply to the litigants who have cases before this court. Counsel, does it all then just come back to what we decide is the rule-creating case? And I guess your position is if Riley is not the rule-creating case, then to go back to Judge Barron's question, you do have to do it on a circuit-by-circuit basis because then you're looking at each of the circuits who are then deciding the next case becomes the rule-creating case, and then when you're looking at whether it upsets settled expectations, you have to look at the legal expectations in that circuit. Correct, correct, Your Honor. In the context of the reinstatement order. Is that quite right even if we know Riley applied it retroactively in that case? In other words, why wouldn't that be a clue that it's not under rule even if we hadn't decided it before because it's not just because it's not been decided before, but it's... Do you see what I'm saying? Yes. So, our position is yes, even if the court finds that the Supreme Court applied a new rule to Mr. Riley because... That's a prediction that in this type of case it would not apply it to that person? Correct. And that would be indifferent to what our law was. It would be for reasons independent of that about the newness of that rule, I guess, right? Because of different contexts, even if... But I'm saying if we know Riley did apply it retroactively, what is it about this context that would make it any more new than that context? So, the analogy, the good analogy would be the effect pattern in Crow. And the effect pattern of Crow is very similar to the question that this court is addressing. So, just to summarize it, there was First Circuit precedent on the... I'm forgetting, but either discretionary or mandatory prejudgment interest. And then three years after that case law, the Supreme Court, there was intervening Supreme Court case law, was about not in the strictly same context, but either mandatory or discretionary context, and everyone has to file 59E instead of 68, the different rule. I see where you're coming... Was a Crow issue raised in Riley itself? I do not believe so. Is it your view that actually this same argument could be made in Riley cases? So, I don't think there was... It could have been raised, but I don't think there was a room for the litigants to raise in Riley, because it came from the Fourth Circuit. And what happened was, right before Riley, there was a Martinez case. And in Martinez, the litigants did actually raise this prospective argument, but Fourth Circuit rejected it, only because... There were two reasons. One was, I don't think the Fourth Circuit had a case law like Crow. So, that was one question. But then, the Fourth Circuit said, because the new rule of the Fourth Circuit in Martinez was jurisdictional, that jurisdictional, if its new rule is about jurisdictional, then there's no room for prospective retroactive application. So, after Martinez, Riley came, and then the Fourth Circuit immediately applied the same holding to Mr. Riley, and then the litigant appealed that decision to the Supreme Court. So, it could happen. However, the more fundamental issue that Mr. Riley had was whether 30-day was jurisdictional, and then two, when was the demarcation line of when to file the 30-day deadline. So, in theory, that argument could have been raised, but there was a more fundamental problem because it came from the Fourth Circuit. Counsel, can I ask you to turn to the jurisdictional issue? So, aside from the 30-day issue, there's the issue of whether you can't even just appeal unless there's a petition, unless there's also a petition from a final removal order, and whether that's just a separate jurisdictional problem that we have. So, can you address that? Yes. So, yes, Judge Rickman. So, that's technically separate. I call it gatekeeping issue or jurisdictional issue. So, the government's position is that everyone has to challenge the removal ability or the removal order in order to be permitted to challenge non-removal order issues. So, in this case, cat order. This court has never permitted and provided any precedent, even suggesting that that's what the 1252 says. And I'm looking at, for example, 1252A4, which is about the cat judicial review. And the plain text doesn't actually say that. It only says that cat, any cause or claim with respect to cat, has to be reviewed in accordance with the petition from Review 5 and the 1252. It doesn't say that everyone has to raise that argument in the opening brief, for example. What about the earlier provision, which requires you to challenge an order of removability to have review? I understand, but... I think the theory in the Thomas and Curran's and the government's position is you read the two together. Even if you're right, 1254 doesn't mandate it. But it doesn't mandate the opposite either. And so, if that earlier provision says there has to be a challenge to an order of removal, then that just always is the case, and all that 1254 is making clear is you can't hear it outside that context. I understand, but that would be... So why is the first leg of that argument wrong, that the earlier provision, I forget what it was, 1252A or whatever, why is that provision not itself saying you simply can't get review of something independent of the order of removal? I understand, but it would make little sense when... But Riley, some people in the dissent thought made little sense. I understand. Their answer to that was maybe it makes no sense, but the text is what it is. Riley did not address that question. It came from Curran's. I'm just asking, what text of that earlier provision can be read consistent with how you want us to read it? I understand why 1254 can be read, or A4, I forget the numbers. I see why that text helps you, but I don't see how... How do we read it with 1252A1? That's the one, thank you. At this point, the only thing, we'd be more than happy to address that through the supplemental briefing. I don't think that issue was fully addressed, but if this court were to address that issue and dismiss the petition only because petitioner has not challenged the removal order, then that should also be applied prospectively because that would be complete change of this court's practice and precedent because this court has repeatedly addressed statutory withholding or cat orders only, even when... But it's jurisdictional, can we do that, new rules? Right, you're almost right. We'd be more than happy to address that through the supplemental brief if the court were to have concern over that jurisdiction or that piece. I'd be happy to answer any other questions, but my time is up. One more gating question. You're challenging only the withholding. Cat order, we don't have a cat order. And the cat, does it matter that since you're not challenging the order of removal and the person has been removed, that that person is subject to an order of removal unchallenged that prevents them from being in the country for purposes of you being able to get relief for what you are seeking relief for? So, I apologize, I'm trying to digest your honest question. The fact that he did not raise an unchallenged order of removal in place, so he cannot come back to the country without being subject to an order of removal. Typically, when you bring a cat or withholding claim, you're saying, I get that, but I don't want to go to this other place. Now he is in that other place. When you're still challenging the order of removal, I think we've said you can come back and it doesn't moot it out because if we got rid of the order of removal, you could come back in. But you're not challenging the order of removal, so that ground for saying it's not moot, where there's no standing, is gone. So, we have cases that say even when you're not challenging the order of removal, you've already been removed and all you're challenging is the country that you're in. But you're in that country, you still can challenge that? So, I don't think there's any case law from this court or any other court because that encompasses the effects of the Riley decision of that context. But if the court were to, so let's say this court applies prospectively of this new rule, and if the court vacates the BI's order, then he still has the pending, the withholding only proceedings. So, that's when the government... And that's enough for him to be able to come back into the country for those proceedings. Yes, so whether he would be able to come back, that would have to be then addressed through the government's policy. But again, I don't think that would depend on... But if they have a policy we're not going to let him back in, and you're powerless to do anything about that policy, how can he have the withholding proceeding? So, if that would be... I'm just based on the government's hypothetical scenario that that could happen. I think at least before the BI, he could still have the proceedings. And he's not actually in his country either. So, but if the case goes back to the immigration judge level and requires hearing, then that's something that we can address that issue with the government. And if the government contests that he's still with BI, then that's something that we can still address with the court. Does it matter that he's not in Honduras? That was another question that I had. Since the only relief he could get is being removed to a country other than Honduras, and he's actually not in Honduras, does that make a difference in how... I don't think that makes... I apologize. I don't think that makes any difference, but if the court has any concern over that, that could actually go into the merits of the case once the case is back. But I don't think as a matter of law, I just do not see how that affects his case as legally, particularly when... Where is he now? He's in Mexico, Your Honor. So, what can he get from us that would help him? If the court vacates the BI's order, then our position is to ask the government to allow him to return so that he can further participate in his proceedings. And if he prevails in CAP proceedings with respect to his country, then he should not be removed to his country. But practically, as his lawyer, since he's not in Honduras right now, what would you be getting for him? First, because his presence in Mexico is not permanent. And he's in a very vulnerable position. We are doing our best to provide temporary protection. We've been reaching out to some of the non-profits in Mexico, but that's really temporary. He's still at risk of being... Yes, Your Honor. So it's not like he already settled in Mexico. He's at risk of being sent to Honduras. Yes. By the U.S.? No, by the Mexican authority in Mexico. Once he's left Honduras and gone to Mexico, how does an order preventing the U.S. from sending him back to Honduras help him? Because... If he's sending him to Honduras, Mexico would be. Right. So we don't actually know whether Mexico would remove him to Honduras yet, but he's still in a vulnerable position because he doesn't have any status in Mexico. Yes. Is there any way for the U.S. to remove him to Honduras now? Since he's not here, unless the court... If the court denies his petition or dismisses his petition, then there will be no question about that. But if the court vacates the cat order, then he can return to the United States. At least that's how we view... I'm sorry? To ask not to be returned to Honduras where he isn't? Right. Because he's in Mexico, not that he wants to... Typically when you come back, you'd be challenging the order of removal. It would make sense. I want to come back here, and I want to make sure if I lose on my challenge, you can't send me to Honduras again. But you're coming back here just to say, don't send me to Honduras. He's already been sent to Honduras, now he's in Mexico. The U.S. can't send him again to Honduras. Then you want to come back to this country and say, I want to come back to the country and say, don't send me to Honduras. We weren't going to send you anyway because you're already not there. We sent you once. Do you see? It's an odd idea. Unless it's just some complicated way just so he can touch ground in the U.S. again, then we'll see what happens. Is that the idea? So I still do not think that if the court vacates the CAT order, then that would not be meaningful for him. I still disagree because now let's say he's settled in Mexico, he has status in Mexico, then that could be different. But that's not the case. He is only in Mexico because the U.S. at present has no ability to get him to Honduras. They have no authority to do anything to him that will make him go into Honduras. And all you're trying to do is get protection from the U.S. sending him there. But you're saying he's worse off because if he came here and he got the CAT relief, then he would have some kind of legal status or some sort of protected status to wherever the U.S. removed him to. Is that basically your argument? Yes. So just practically you're saying your client is worse off, right? He would be better off if he were returned and actually granted the CAT. Correct, Your Honor. Explain the I don't follow. How would that be? What would he do? Let's say the order says you cannot send him to Honduras. Then the idea would they be then responsible for doing something with him? No. So it depends on the timing of the case. So that would be really based on the potential hypothetical scenario. So let's say that the court vacates the CAT order, and then the case goes back to the BIA. And then let's assume again the BIA sends a case back to the IJ, that he would have to participate in the proceedings. I just don't know how he could participate in the proceedings unless he comes back to the U.S. with an exception of the government. I follow that. Yes. If he did come back at that point, then he'd be better off than he now is. Yes. Yes. Unless, of course, there are any other questions, I could answer other questions in my report. Yes. Chief Judge Barron. Based on the merits, I was just puzzled by one thing. The petition seems to be predicated on the assumption that the officers who shot him were not actually police officers, and therefore the issue for us is acquiescence. Yes and no. I apologize. So yes, it's about acquiescence because that's what the IJ relied on. But didn't you make a separate argument to the IJ that they were police officers? Yes. But in your petition, you don't repeat that claim, which was never addressed. In other words, and I don't fully understand how this got in this situation where we're just assuming they weren't police officers. I mean, what reason is there to think they weren't real? So instead you're in this position where you're saying, well, let's assume they're not real, but we can then show that we acquiesced in those fake people's actions to my client, which is a much harder argument to make. Am I right that you just aren't arguing that they actually are police officers and that's why you win? So the fact has different scenes. I just call it a scene because they're different events. And the literal ambiguity was because of the significant entanglement between police officers and some of the members of this organization. What IJ focused on was the relationship, the entanglement, the part of the… Even if they're entangled, there were actual people who did something to your client. Yes. Do we have any evidence that those actual people were acting with the acquiescence of officials? Yes. So the way that IJ approached this question was holistic. We call it IJ holistic approach because it's not the way that BI approach was divided and conquered, and that's a problem because the way that IJ addressed was relying on petitioner's testimony, which was not disturbed by BIA. So there were officers who were active or a member of this criminal organization, and they were given… Either they were actual officers or they were given police officers. And after that, BIA acknowledged in three incidents that there were actually police officers confirming the color of law. They were still chasing him down, even though he didn't have any independent criminal allegations against him. So from IJ's perspective, it was reasonable to conclude that these are all connected, including the three incidents that BIA did not disturb. They were acting on the color of law. Otherwise, it makes no sense why would a police officer, when there's no criminal allegation against him, has a photo of him interrogating him, go to his aunt's house, even after he's relocated, go to his sister's house when he relocated. Yes. Last question. The actual cat conduct that constitutes the torture… Yes. …isn't those things, is it? That's not… Right, right. The actual conduct was the shooting, right? Right, the shooting and threat. And the shooting and threat, do we have anything connecting those various actors you're describing to the shooting and the threat? Only the fact that they were wearing police uniforms. We did flip vest. Okay. Thanks. Thank you, Your Honor. Thank you. At this time, would counsel for the appellate please introduce herself on the record to begin? Good afternoon, Your Honors. Jenny, on behalf of the respondent, the Attorney General of the United States. The court should dismiss the petition for review for lack of jurisdiction because petitioner does not seek a final order of removal as required under 1252A1. In addition, as noted by Justice Thomas in his concurrence, a CAT claim can only be reviewed under FAR FARA Section 2242 if it's tied to a final order. Here, petitioner does not challenge a final order of removal. With regard to Mansolvo Velasquez, as cited by petitioner's counsel, the reason why the court was able to have jurisdiction over the protection claim in that case is because in Mansolvo, there was a final order that was at play. In Mansolvo, it was a motion to reconsider, a denial of a motion to reopen, which is a final order. With regard to whether Riley should apply to this case, this case falls squarely within Riley. Petitioner does not challenge a final order of removal. The final order of removal was issued in 2023. He does not file his PFR until 2025. And with discussion about whether we should apply Riley prospectively, that doesn't make sense because Riley applied to the parties in that case. The exception, the crow exception, is an exception. The default rule is that it applies to all parties prospectively. Retroactively, sorry. Counsel, just focusing on the jurisdictional issue that you started with, I'm just trying to understand the implications of your argument. As far as I understand it, a reinstatement order itself can't be subject to a petition for review. Is that correct? No, the reinstatement order is a final order, and they can file a PFR from that, from either the reinstatement order or the FARO, the final administrative removal order. They can file their PFR within 30 days of that final order. Okay, I thought, so you don't read 1231A5 to prohibit a petition for review of a reinstatement order? No, it only, what you can challenge with the reinstatement order, or with the FARO, is limited, but they can still file a petition for review. And you're relying on Justice Thomas' concurrence as you laid out, I think, in your reply brief, but obviously the majority of the Court didn't adopt his position, and in fact I think he suggests that they rejected it in an earlier case. So why, in your view, since it's not what the Supreme Court itself has held, why should we be adopting that position now? There are two reasons. In Monsalvo v. Velazquez, which was decided just two months before Riley, there was the discussion of the final order and such, but that did not apply. The Supreme Court was, all the justices there were well aware of what they just decided two months ago, but then they didn't, I guess, say that, they didn't find that the final order, they didn't, sorry, in Riley they still considered the reinstatement, sorry, the FARO order to be final. They didn't have to if they were taking the point of view of Monsalvo that petitioners counsel do. And then, as Justice Thomas and as Justice Alito stated in Riley, the Court has to always be satisfied with its jurisdiction. And although the Court didn't make that final leap that Judge Thomas did, it was sent back to the Fourth Circuit to consider the jurisdiction issue. And Riley is being argued next week with the jurisdiction issue. And other courts of appeals are very interested in the jurisdiction issue and have been asking our office for supplemental briefing on it. So it will be coming down the pike. And as the Court said, as the Supreme Court said, the Court must always be satisfied with its jurisdiction before moving on to the next step. Going back to Riley, although this Court does have the precedent decision Garcia, Garcia did not deal with jurisdiction, it just assumed jurisdiction. And as we know from the Supreme Court case law, Pennhurst State School, that is not a jurisdictional ruling that would be this Court's. Are you talking about whether to apply now the Riley rule? No. In Garcia, the Court assumed that the withholding only decision was the final order, even in a reinstatement context. And that was... You're still on the jurisdictional question, Judge. No, I'm sorry. I moved on to Riley. Should I go back? Why are you calling it jurisdiction? I thought Riley said it wasn't jurisdictional. I'm sorry. I misspoke. It's not jurisdictional. It's a claims processing rule. So then what's the significance of what you're saying about Garcia? I'm not sure, Your Honor. And I believe the Court did not have any questions with regard to equitable tolling, but Respondent does not believe equitable tolling should apply in this case because the statute 1252B1 is very clear in its language that, and it doesn't leave room for tolling in that situation. And with... Is it clearer than a normal statute of limitations? I'm sorry. Ordinarily, statutes of limitations and things like that are subject to equitable tolling. Is there something special about this that would make it not subject to it if it's not jurisdictional? Right. Because the language in 1252B1 is very clear as to when it must be filed. Isn't that true of all statutes of limitations? And yet, generally, those are subject to equitable tolling. They are, unless the language is very clear. But we just don't look at the language. We look at the context in relation to the federal rules of appellate procedure as to when a petition for review from an agency decision must be filed. We look at the legislative history of the Immigration Nationality Act. And then we can look at Stone, where Stone did find 1252B1 to be jurisdictional and mandatory. And, of course, in Raleigh, the Supreme Court said, no, it is not jurisdictional. And the Supreme Court in Raleigh could have said it's subject to equitable tolling, but they did not make any such claim like that. So if we look at the entire structure of the entire universe of what we look at for equitable tolling, we do not feel that this case falls within that universe. And also, if we were to apply equitable tolling to Petitioner's case, what are we seeking to toll? His final order? He didn't challenge his final order. So equitable tolling doesn't make sense in this case. And do you have a view about the questions we were asking as to the jurisdiction to challenge the CAT ruling when he's not challenging the order of removal and he's already in now not even the country he doesn't want to be removed to but another country? I would think that in such a situation where Petitioner is not challenging the final order, they've already been removed to Honduras, and he's no longer in Honduras, we would think that that CAT claim would be moot because why would the United States facilitate his return? Well, first, the government has to determine that his presence is necessary enough to facilitate his return. Why would they do that if he's no longer in the country that he fears where he'll be tortured? They say because he's at risk of being sent to that very country and that if he came here and had an actual order saying that he needed to be removed to another country, he would be removed to another country where he'd have some sort of lawful status and wouldn't be at risk of being sent to the place where he was just adjudicated to be at risk of torture. Right. But that makes sense to some level, but he would still be at risk in this country because he does not have a CAT grant. If he's in another third country like Mexico, he could probably seek protection there and get the same type of relief of not being sent to Honduras. With regard to Judge Barron's questions going to CAT, I will just wrap up. The problem that the board found with the immigration judge's analysis or factual findings is for color of law and acquiescence analysis, we just don't know the scope of the police action. So Petitioner did say that the police officers gave the gangs uniforms, but we just don't know what the parameters of that is. So if we have an absence of a factual finding or evidence, then that is clear error for the IJ to make that factual leap. If the court has no further questions, respondent rests on the pleadings. Thank you. Thank you, counsel. At this time, would counsel from Petitioner please reintroduce himself. May it please the court, St. Joaquin for Petitioner. Again, I'd be happy to answer any other questions that the court has. If not, then we ask the court to entertain all claims and vacate B.I.'s decision. Thank you.